**SO ORDERED.**

**SIGNED March 27, 2024.**



_____
**JOHN W. KOLWE
UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| In re: | Case No. 23-50889 |
| Michel Blanco Moreno,<br>*Debtor* | Chapter 7<br><br>Judge John W. Kolwe |

### Ruling on Motion to Transfer Venue (ECF #32)

Michel Moreno filed his chapter 7 petition in this court on December 1, 2023. He initially claimed venue is proper here because he lived in Lafayette, Louisiana and claimed to have lived here longer than in any other district in the 180 days prior to the petition date. He later amended his petition to show that he lived in Dallas. Even so, he contends venue remains proper here because two companies in which he owns an interest have chapter 7 cases pending in this court, and because he owns other property in Lafayette. The Debtor's two primary creditors, Baker Hughes Energy Services, LLC, formerly known as GE Oil & Gas, LLC ("GEOG") and Alan Halperin, solely in his capacity as trustee of the GFES Liquidation Trust ("Halperin"), have objected to the Debtor's choice of venue, and have moved to transfer this case to

1

the Northern District of Texas.[1] They claim that venue is appropriate there because the Debtor has lived in Dallas for at least a decade, his principal assets are there, and the majority of his creditors are located in Texas. The Court took the matter under advisement following the hearing and now rules as follows.

## Jurisdiction

The Court has jurisdiction to hear this core matter under 28 U.S.C. §§ 157 and 1334 and 28 U.S.C. § 157(b)(2).

## Findings of Fact

The relevant facts are taken almost entirely from the Debtor's Petition, as amended (ECF ##1 and 19, respectively), and his schedules, as amended (ECF ##23 and 26, respectively).[2] In his original Petition, the Debtor answered Question 5 ("Where you live") as being 600 Jefferson St., Suite 1401, Lafayette, LA 70501. In answering Question 6 ("Why you are choosing *this district* to file for bankruptcy") the Debtor checked the box indicating that in the last 180 days he had resided in this District longer than any other district. The Court takes judicial notice of the fact that 600 Jefferson St. is an office building (Chase Tower) located in downtown Lafayette.

On January 8, 2024, the Debtor amended his Petition and changed his answer to Question 5 to indicate that he lives at 4425 Highland Dr., Dallas, TX 75205. He also changed his response to Question 6 by indicating he chose to file in this district because he "owns property in the WDLA and has 2 companies affiliated in Ch 7 in WDLA."[3]

Several days after amending his petition, on January 12, 2024, the Debtor filed his original schedules and statement of financial affairs. They show that the debtor owns a non-domiciliary house located at 409 Worth Avenue, Lafayette, LA 70508,

---

[1] GEOG filed the Motion to Transfer Venue (ECF #32), which Halperin joined separately (ECF #41).

[2] Although Debtor's counsel listed him as a "may call" witness in preparation for this hearing, and GEOG offered to let him do so, the Debtor did not testify. Doing so would have added nothing because he already certified under penalty of perjury that the facts set out in his Schedules and related documents are true.

[3] (ECF #19).

2

which he values at $2 million. The schedules also show that the Lafayette house serves as security for a loan made by First Horizon Bank, with the current amount owed to First Horizon scheduled at $2,000,000. The Debtor filed a Notice of Intention indicating that he plans to retain the Lafayette House and continue paying First Horizon. Thus, based solely on the schedules, the Lafayette house appears to have little value to the bankruptcy estate.[4]

Attached to the schedules is a list of numerous limited liability companies and trusts in which the Debtor owns an interest. The domicile of the trusts and the principal place of business of each entity are not disclosed, and the schedules show a $0.00 value for them collectively. The two bankrupt companies the Debtor refers to for establishing venue are Hometown Services, LLC (Case No. 22-50106) and MOR KM Holdings, L.L.C. (Case No. 22-50123). The Court takes judicial notice of the fact that both of these cases were filed as no-asset cases, that the companies had no operations for some time, that both companies are now unrepresented in their cases, and that the only material pending matter in either case concerns the Trustee's proposed sale to insiders of those Debtors of claims against Mr. Moreno, his wife, and affiliated companies and individuals (including the proposed purchasers of the claims), which apparently is the only way any money will come into the case.

As to the rest of the Debtor's property, the most valuable listed asset by far is the Debtor's residence in Dallas, which he values at $9 million. This single property makes up the vast majority of his claimed total property value on Schedule A/B (ECF #26). He also lists a timeshare in the Caribbean valued at $200,000, along with a couple of life insurance policies and various household items and the like valued fairly low. *Id*. The Debtor claims to have no legal or equitable interest in cash and a checking account deposit of only $110.00. *Id*.

---

[4] The Court takes judicial notice of the fact that First Horizon Bank filed a proof of claim in this matter asserting a secured interest in the property of $3,053,986.59 against an estimated value of $4,370,120.00. Thus, contrary to the Debtor's assertion (as reflected in the schedules and based on the Notice of Intention), the Lafayette property may have value to the Bankruptcy estate. Regardless, the Court notes that the value of the Lafayette house pales in comparison to the value of the Debtor's real estate holdings in Dallas.

3

In the Debtor's Statement of Financial Affairs (ECF #23), he claims that he has had no income from employment or from operating a business, or any other income, during this year or the two previous calendar years. Yet, he has monthly expenses of $127,478.48, against $100,000 in income he claims his wife earns, for a net monthly loss of $27,478.48 (Schedules I and J, ECF #23).

The Debtor lists a total of 14 creditors in his schedules, with First Horizon Bank being the only secured creditor. Of the 14 listed creditors, eight have offices in Texas (Schedules D and E, ECF #23). All of the Debtor's claimed property exemptions, including a $9 million homestead exemption, arise under Texas law (Schedule C, ECF #23). The Debtor's listed claims against third parties and contingent claims arise under Texas law and involve mostly Texas parties (Amended Schedule A/B, ECF #26).

Finally, the Chapter 7 Trustee selected through an undisputed election in this case, Jason A. Rae, is officed in Dallas. (ECF #29). Thus, looking only to the Debtor's Petition and Schedules, as amended, and to the undisputed facts, the Court is compelled to find that the vast majority of the Debtor's claimed property is located in Texas, and most if not all of the legal issues implicated in his claimed exemptions and asserted claims arise under Texas law and involve Texas parties.

## Conclusions of Law and Analysis

A.  **Grounds for Venue, Deference, and Burden of Proof**

The question before the Court is not whether venue is proper—GEOG concedes that point. Instead, the Court must determine whether venue is more appropriate in another court—the Northern District of Texas. Although not determinative on its own, an understanding of the basis for venue in this Court is relevant to the Court's overall analysis.

Venue for most individual debtor bankruptcy cases can be established under 28 U.S.C. § 1408(1), which provides that venue is proper in the district in which the individual's domicile, residence, principal place of business or principal assets have been located in the 180-day period preceding the bankruptcy filing. *Id*. There is one

4

other possible location for venue of a bankruptcy case: the district in which there is pending a bankruptcy case of a person's affiliate, general partner, or partnership. *See* 28 U.S.C. § 1408(2). "Section 1408(2) is an alternative venue provided for cases concerning affiliates of a person or entity already subject to a case under title 11," and it "is in addition to those provided by section 1408(1)."[5] This alternative venue is premised on the presumption that there may be situations in which a corporate affiliate's bankruptcy case may impact that of the parent, or vice versa.[6] Although this alternative basis obviously applies to individual cases, it rarely serves as the basis for venue in those cases.

Venue of individual debtor cases is not typically contested because debtors usually file in the district of their permanent residence. This case started that way as the Debtor here, Mr. Moreno, originally claimed venue was proper in the Western District of Louisiana, Lafayette Division, because he lives in Lafayette. This assertion was incorrect—the Debtor claims it was a mistake—and he later amended his petition to acknowledge that his permanent residence and domicile are in Dallas.

The Debtor still maintains that venue is proper in this Court because he owns property in the Western District of Louisiana, and because he has affiliate companies with bankruptcy cases pending here.

The Debtor's ownership of property in this District may not be sufficient to establish venue under § 1408(1), as the test is whether his "principal place of business" or "principal assets" are in this District. That does not appear to be the case. The Debtor claims to have an office in Chase Tower in downtown Lafayette, which the Debtor refers to as his "operations office," but his schedules do not show that he is renting an office. Even if he maintains this office, there is no evidence showing that this is his principal place of business.

In fact, there is no evidence that the Debtor is engaged in any business activities anywhere. The schedules show that he is self-employed but has no income

---

[5] COLLIER ON BANKRUPTCY, ¶ 4.02[3] (Richard Levin & Henry J. Sommer eds., 16th ed.).

[6] *Id.*

5

23-50889 - #68  File 03/27/24  Enter 03/27/24 14:21:49  Main Document  Pg 5 of 14

from that employment. And the Statement of Financial Affairs shows that the Debtor had no income in 2023, the year this case was filed, or in the previous two years. Perhaps most significant is that the Debtor did not refer to his Lafayette office as his principal place of business in his briefing on venue. Nor is "principal place of business" stated as a basis for venue in this District in his amended chapter 7 petition.

As to the location of his principal assets, the Debtor's schedules indicate he owns interests in several LLCs that are shown to have no value. He also owns a house in Lafayette, valued at $2 million, which may be fully encumbered. The value of his Louisiana assets pales in comparison to that of his residence in Dallas, which is unencumbered and valued at $9 million. He claims the house is fully exempt under Texas law, but Halperin claims a constructive trust against the Debtor's Dallas residence under Delaware law.[7] He also scheduled several causes of action as assets, all of which appear to have arisen in Texas and are based on Texas law. Thus, while the Debtor obviously has valuable assets in the Western District of Louisiana, the Court does not find that this District is home to his principal assets. The Northern District of Texas appears to be the location of those.[8]

Since the Debtor does not reside or have his principal place of business or principal assets in the Western District of Louisiana, he must turn to the alternative basis for establishing venue in a district, § 1408(2). Currently pending in this Court are the chapter 7 bankruptcy cases of two of the Debtor's affiliate companies, Hometown Services, LLC and MOR KM Holdings, LLC, which were referenced by the parties. The Debtor claims that the "pendency of these cases affords proper venue under § 1408(2)."[9]

---

[7] *See Halperin v. Moreno, et al. (In re Green Field Energy Services, Inc.)*, 834 Fed. App'x 695 (3rd Cir. 2020).

[8] As one commentator has noted, "The additional ground of location of assets will not frequently provide a real alternative because the residence of an individual is likely to be located in the district in which the individual's principal assets are located." COLLIER ON BANKRUPTCY, ¶ 4.02[2][c] (Richard Levin & Henry J. Sommer eds., 16th ed.). That is certainly the case here.

[9] (ECF # 42, p. 5).

In a technical sense, these pending cases are sufficient to establish venue under § 1408(2). According to the Debtor, the Court's involvement in these two cases (and in some past bankruptcy cases for companies affiliated with Mr. Moreno) gives this Court a head start in understanding the Debtor's individual case, but the Debtor's link to these defunct companies is, to say the least, attenuated, as these cases are not reorganization cases and do not appear intertwined with, or even remotely involve, his personal assets. The Court is not aware of any hearings in those cases involving the Debtor. In fact, the Court is not aware of any substantial proceedings pending in the Hometown Services and MOR KM cases before this Court other than a motion to dismiss by GEOG and the Chapter 7 Trustee's motion to sell claims against insiders (including Mr. Moreno, his wife, and various affiliated entities and individuals, including Kevin Moody and RKM Holdings, LLC) to Kevin Moody and RKM Holdings in each case.

Simply put, the pending company bankruptcies were filed as no-asset chapter 7 cases, and Mr. Moreno has not had any obvious involvement with either of these cases. Thus, it seems unlikely that these pending cases will give rise to situations that might impact the Debtor's individual chapter 7 case, which is the understood purpose of the alternate venue provision. Even so, that is not the test. The only test is that there be pending an affiliate's case, and that test is met here.

But the Debtor's tenuous connection to this District is relevant to the request to transfer venue, as it may impact the weight or deference to be given his choice of venue. Ordinarily, "a debtor's choice of forum is entitled to great weight if venue is proper."[10] Both in briefing and at the hearing on this matter, the Debtor leaned heavily on this presumed deference, so much so that it appears he views his choice of venue as sacrosanct. But "the plaintiff's choice is entitled to less deference when the plaintiff is not a resident of the selected forum and when the underlying events giving

---

[10] *In re Enron Corp.,* 274 B.R. 327, 342 (Bankr. S.D.N.Y. 2002).

rise to the action occurred outside the forum."[11] Bankruptcy courts have also noted that a debtor's choice of venue is not unassailable:

> Thus, while a debtor's (or plaintiff's) selection of venue is entitled to some deference, it is obviously not controlling. As the late Justice Jackson pointed out in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507, 67 S. Ct. 839, 842, 91 L. Ed. 1055 (1947), venue statutes usually give a plaintiff a choice of courts "[b]ut the open door may admit those who seek not simply justice but perhaps justice blended with some harassment." In order to curb misuse or misapplication of broad federal venue provisions, Congress enacted change of venue statutes. The change of venue statute relating to bankruptcy cases is 28 U.S.C. § 1412....[12]

Section 1412 authorizes this Court "to transfer a case or proceeding under title 11 to a district court for another district, **in the interest of justice or for the convenience of the parties**." 28 U.S.C. § 1412 (emphasis added).[13] Bankruptcy Rule 1014(a)(1) is also applicable here and provides:

> Cases Filed in Proper District. If a petition is filed in the proper district, the court, on the timely motion of a party in interest or on its own motion, and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, may transfer the case to any other district if the court determines that the transfer is in **the interest of justice or for the convenience of the parties.**[14]

The key point is that even if the Debtor's choice of venue is proper, a case may still be transferred to another venue "in the interest of justice or for the convenience of the parties." And although the Court finds that the Debtor's choice of venue may

---

[11] *Huggins v. Stryker Corp.*, 932 F. Supp. 2d 972, 981 (D. Minn. 2013).

[12] *In re Pinehaven Assocs.,* 132 B.R. 982, 987 (Bankr. E.D.N.Y. 1991).

[13] In their briefing, GEOG cited 28 U.S.C. § 1404 rather than § 1412 for the venue transfer standard. Section 1404 applies to all civil proceedings in federal district courts, but § 1412 is the bankruptcy-specific statute and is therefore the more appropriate one to apply here. Nevertheless, because § 1404 permits transfer of venue "[f]or the convenience of parties and witnesses, in the interest of justice," the relevant standard is virtually identical, and the parties' arguments are just as relevant to § 1412.

[14] Fed. R. Bankr. P. 1014(a)(1) (emphasis added).

8

be entitled to less deference under the facts presented here, GEOG and Halperin, as movants, bear the full burden of showing that another venue is more appropriate.[15]

## B. Convenience of the Parties

Courts generally consider the following factors in determining which forum is more convenient under § 1412 and Rule 1014:

(1) The proximity of creditors of every kind to the court;

(2) The proximity of the bankrupt (debtor) to the court;

(3) The proximity of the witnesses necessary to the administration of the estate;

(4) The location of the assets;

(5) The economic administration of the estate;

(6) The necessity for ancillary administration if bankruptcy should result.[16]

Of these factors, "the most important consideration is whether the requested transfer would promote the economic and efficient administration of the estate."[17]

GEOG contends that these factors overwhelmingly point to the Northern District of Texas as the most appropriate venue for the Debtor's bankruptcy case. His domicile and permanent residence are there. His principal assets are there. Many of the material witnesses, including the Debtor's spouse, are located in Dallas, and perhaps outside of this Court's subpoena power. Eight of the Debtor's 14 scheduled creditors are in Texas, while only three are located in Louisiana. Finally, the duly elected Chapter 7 Trustee in this case is officed in Dallas.

The Debtor posits two arguments in opposition. First, he argues that the Western District of Louisiana is the more convenient venue because he purportedly has all or most of his documents stored at his "operations office" in Lafayette.[18] (As already noted, the Debtor's schedules do not show that he is renting an office in

---

[15] *See In re Enron*, 274 B.R. at 342.

[16] *Matter of Commonwealth Oil Ref. Co., Inc.*, 596 F.2d 1239, 1247 (5th Cir. 1979).

[17] *Id.*

[18] (ECF #42, p. 4).

9

Lafayette, and he claims to have had no income of any kind for more than two years.) He claims that if this case is transferred to the Northern District of Texas, it would pose an inconvenience to him because he would still need to travel to Lafayette to review the documents to prepare for any evidentiary hearing.

The Court rejects this argument. The Debtor resides in Dallas, not Lafayette, and not every proceeding in bankruptcy court will require him to review documents, so it is immediately evident that the Debtor would have to travel less if the case is transferred to Dallas than if it remains in Lafayette. Moreover, the documents can easily be moved to Dallas or electronically scanned, obviating the need for any such travel to Lafayette.

The Debtor's second argument is that the Court should place no weight on the "convenience of the parties" prong because of the relative ease in which counsel and other professionals can travel to either district and because of the continued allowance of remote participation in bankruptcy court hearings following the COVID-19 pandemic. Although not cited by the Debtor, the Court is aware of two cases that support this argument. The first, *In re Caesars Entm't Operating Co.*, placed less emphasis on the convenience prong on the grounds that availability of electronic filing, ease of travel, and lawyers with multiple offices located across the country make convenience factors a "push" and thus not determinative.[19] The other, *In re Cox Operating, LLC*, concluded that the convenience factor was neutral, largely based on the reasoning of *Caesars* and because of the relaxed rules allowing remote participation in hearings during and following the pandemic.[20]

This Court cannot quibble with the reasoning or holdings in *Caesars* or *Cox Operating*—the facts of those cases supported each court's finding that the convenience factors were a "push" or "neutral." That argument also has some appeal here, as it certainly seems the professionals could manage this case in Lafayette just as easily as they can in Dallas for all the reasons cited in *Caesars* and *Cox Operating*.

---

[19] *See In re Caesars Entm't Operating Co.,* 2015 WL 495259 * 7 (Bankr. D. Del. Feb. 2, 2015).

[20] *See In re Cox Operating, LLC,* 652 B.R. 49, 57 (Bankr. E.D. La. 2023).

Even so, this Court is not prepared to render the enumerated convenience factors as irrelevant relics of the past, at least not in all cases, and particularly not in cases involving individual debtors. In this case, the proximity of the Debtor, principal assets, witnesses, creditors, and the trustee to the Dallas bankruptcy court overwhelmingly favor the Northern District of Texas as the most convenient forum.

**C.    The Interests of Justice**

Courts take a more holistic approach when considering the "interest of justice" prong. They focus on abstract, not easily quantifiable factors, such as the efficient administration of the estate and fairness:

> "The interest of justice prong is a broad and flexible standard," *In re Enron Corp.*, 274 B.R. at 349, and its test "involves balancing more intangible considerations," *In re Abengoa Bioenergy Biomass of Kan.*, LLC, No. 16-10446, 2016 WL 1703927, at *6 (Bankr. D. Kan. Apr. 25, 2016). "In evaluating the interest of justice, the Court must consider what will promote the efficient administration of the estate, judicial economy, timeliness, and fairness." *In re Enron Corp.*, 274 B.R. at 349. "It has also been noted that it is 'appropriate to add as an additional relevant factor, through it may rarely be applicable, the integrity of the Bankruptcy Court system.'" *In re Patriot Coal Corp.*, 482 B.R. 718, 739 (Bankr. S.D.N.Y. 2012) (quoting *In re Éclair Bakery Ltd.*, 255 B.R. 121, 142 (Bankr. S.D.N.Y. 2000)).
>
> The Court's interest-of-justice analysis here centers on consideration of what will promote fairness.[21]

This Court agrees with *Cox Operating* that fairness is one of the top considerations when determining the interest of justice. An equally important consideration is the efficient administration of the estate.

*Cox Operating* is particularly instructive. There, certain creditors filed an involuntary petition against a company in the Eastern District of Louisiana. The purported debtor in that case was organized under Louisiana law, thereby making

---

[21] *In re Cox Operating, LLC*, 652 B.R. at 57 (footnote omitted).

11

venue appropriate in that court. Days later, the parent company and other affiliates of the Louisiana debtor, all organized under Texas law, filed a voluntary petition in the Southern District of Texas. Since venue was proper for both the voluntary case in Texas and for the involuntary case in Louisiana, the Louisiana court, as the home of the first-filed case, was charged with determining whether and where to consolidate venue. Ultimately, the court reasoned that although many of the factors in that case remained neutral, the "perception of fairness in the bankruptcy process" warranted transferring the Louisiana case to Texas:

> Frankly, in analyzing the convenience of the parties and the interest of justice given the facts here, there is little upon which to base a venue determination. Bankruptcy courts routinely apply and interpret other states' laws and regulatory regimes and both venues are subject to the same substantive circuit law. Yet the decision to retain the putative debtor's case and administer its affiliates' cases in this district carries with it the enormous risk of fostering a perception that the decision was made solely to advantage the Petitioning Creditors over all other stakeholders—and that is a risk this Court is not prepared to take. It is the Court's sincere view that, given the contours of this particular case, any determination that this district is the venue in which the bankruptcy cases of Cox Operating and its six affiliates should proceed would only serve to breed mistrust in the Court's evenhandedness and the bankruptcy process itself, thereby jeopardizing the opportunity to conserve and protect the value remaining in these estates to the detriment of all creditors.[22]

Turning to this case, the undisputed facts present a clear picture: this is effectively a Texas bankruptcy case that has ended up before this Court only because the Debtor chose to file here. He does not live here, have any ongoing business operations here (and has not for at least the two years prior according to his own filings in this case), or have his principal property here.

The affiliated no-asset companies with active chapter 7 cases in this district, the Debtor's only hooks to venue here, seemingly have no impact on his personal case

---

[22] *Id.* at 59.

or vice versa, and those cases are proceeding through liquidation with no assets, no counsel, and little hope of recovering any money for the estates beyond the possible sale of certain claims to insiders. The issues implicated in his personal bankruptcy have virtually no connection to this district. And contrary to the Debtor's assertion otherwise, the Court is not aware of any special knowledge or background gained from the pendency of these cases that should somehow compel it to keep Mr. Moreno's personal case in the face of the overwhelming factors pointing to venue in the Northern District of Texas.

The Court might feel differently if the record showed that the Debtor was employed by the bankrupt companies, or if these companies were integral to the Debtor's ability to provide for himself and his family. Similarly, if the Debtor had guaranteed obligations of the bankrupt companies, the Court might be inclined to maintain venue here in the interest of justice. But that simply has not been shown, and it is not self-evident.

The final factor for consideration is the efficient administration of the estate. It is axiomatic that transfer of this case to Dallas would promote the economic and efficient administration of the estate, for all the reasons already noted, including the fact that GEOG and Halperin have already elected a Chapter 7 Trustee to administer and manage the estate, and he is officed in Dallas.[23]

## **CONCLUSION**

In sum, the Court finds that this case overwhelmingly appears to be one that should be heard in Dallas in the interest of justice and for the convenience of the parties. The Debtor has failed to cite a single viable reason why the pendency of the chapter 7 bankruptcy cases of his affiliates in this District compels this Court to maintain venue over his individual case. He has not cited any legitimate reason why

---

[23] The Court has reviewed the pleadings filed by the United States Trustee in support of the election. These documents show that all formalities required by the Bankruptcy Code and applicable Bankruptcy Rules were followed. The Debtor and his counsel were present at the election and they did not lodge any objections to the process, nor did they argue that there were any issues with the election of the Chapter 7 Trustee in connection with this Motion.

13

Dallas would be less convenient for him personally or for the majority of creditors and witnesses. There is such a tenuous connection to Lafayette that maintaining the case in this venue would not be in the interest of justice, as it would allow the Debtor to impose inconveniences on nearly everyone involved, including the Chapter 7 Trustee, all to carry out this bankruptcy case in a district in which the Debtor does not reside or engage in any business activities in support of himself and his family.

The Court concludes that GEOG has carried its burden of showing that this case should be transferred to the Northern District of Texas, and the Court will grant the motion to transfer. All pending unresolved motions will be transferred in their current status.